UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**HOMELIFE IN THE GARDENS, LLC
ET AL**

**VERSUS**

**LEIGH LANDRY**

**CIVIL ACTION**

**NO:  16-15549**

**SECTION: "I" (4)**

ORDER

Before the Court is Counter-Defendants' **Motion for Leave to Amend Answer to Counter-Plaintiff's Counterclaims (R. Doc. 62)**. No opposition was filed. The motion was submitted on November 22, 2017.

I.  **Background**

This case is a diversity action filed by HomeLife in the Gardens, LLC ("HomeLife"), a citizen of Ohio and Tennessee, and Donald E. Rankey, Jr. ("Rankey"), a citizen of Ohio and member of one entities that is a member of HomeLife, against Leigh Landry ("Landry"), a citizen of Louisiana. R. Doc. 1.

The plaintiffs allege that on or about April 28, 2016, Landry became the Executive Director of HomeLife in the Gardens assisted living facility in New Orleans. Plaintiffs contend that within weeks of the commencement of Landry's employment HomeLife began receiving complaints relating to Landry's treatment and behavior towards HomeLife's residents, staff, vendors, and residents' families. R. Doc. 15, pp. 3-4.

After extending Landry's introductory period for an additional sixty days in early August due to the complaints, Plaintiffs contend that between August 11 and 15, 2016, HomeLife became aware that Landry's behaviors did not change or improve. Additionally, Plaintiffs allege that on August 17, 2016, Landry called Rankey's son to tell him that she received a call from Rankey that

disturbed her and purportedly had Rankey's son listen to the message. Plaintiff's state that Rankey's phone records show that he did not make the disturbing call to Landry and that several resident and employees of HomeLife attest that Rankey was in a meeting at the time this call was supposedly made and he neither left the meeting nor made any calls. *Id.* at p. 5.

According to the Plaintiffs, Landry was terminated on August 17, 2016 due to complaints, as well as an unwillingness to conform to responsible and professional behavior. *Id.* at p. 6. HomeLife contends that on September 13, 2016, it learned that Landry was forwarding the voicemail to multiple people, claimed it was from Rankey, and that several marketers at an industry event were discussing the voicemail and that multiple individuals stated that no longer wished to do business with HomeLife based on the message. *Id.* at p. 6. Plaintiffs allege that the defendant either created or received the message from another caller and maliciously edited it to identify Rankey as the caller. *Id.* at p. 7. Plaintiffs further allege that Landry continues to falsely and maliciously proliferate the message throughout the industry, the greater New Orleans area, and the HomeLife in the Gardens community causing damages to reputation, business relations, business opportunities and goodwill. *Id.* The Plaintiffs seek damages for defamation and intentional infliction of emotional distress as well as a permanent injunction. *Id.* at pp. 8-12.

Landry filed an answer as well as a number of counterclaims on August 2, 2017. R. Doc. 48. Landry's counterclaims include sexual harassment, intentional infliction of emotional distress, assault and battery, whistleblower claims under Louisiana law, violations of the Louisiana Unfair Trade Practices Act, defamation per se as to Landry's EEOC claim, and fraud. *Id.* at pp. 7-14.

Plaintiffs/counter-defendants filed their answer to the counterclaims on September 25, 2017, and asserted numerous affirmative defenses. R. Doc. 60. The affirmative defenses listed by the counter-defendants include a failure to state a claim upon which relief can be granted, a statute

of limitations defense, and a lack of jurisdiction the claims of discrimination or retaliation that were not part of the charge filed with the EEOC. Counter-defendants also list as affirmative defenses the counter-plaintiff's failure to take advantage of preventative or corrective mechanisms and failure to mitigate damages. In addition, counter-defendants list as affirmative defenses a denial that anyone violated Landry's rights, any actions taken were outside the scope of employment, a lack of willfulness or intent to violate the equal employment laws, waiver, unclean hands, laches, equitable estoppel, and mistake. Finally, Counter-defendants also state they reserve their right to assert such affirmative defenses and other defenses as appropriate via separate motion which cannot be determined without the benefit of discovery. *Id*.

The Plaintiffs/counter-defendants filed the instant motion on November 6, 2017 seeking leave to file an amended answer to the counterclaims asserted in this case. R. Doc. 62. The counter-defendants seek to file an amended answer to add two additional affirmative defenses in response to the counterclaims in this case. The additional affirmative defenses that the counter-defendants wish to add are: (1) qualified or complete privilege to the defamation counterclaim; and (2) that any actions allegedly committed, which counter-defendant denies, were committed outside the scope of employment and therefore cannot be held responsible under a theory of *respondeat superior* and/or joint-employer liability. R. Doc. 62-1, p. 3; R. Doc. 62-2, p. 7.

A scheduling order was issued by the District Court in this case on August, 10, 2017, setting the deadline for amendments to pleadings, third-party actions, crossclaims, and counterclaims for September 8, 2017. R. Doc. 52. The scheduling order sets the final Pre-Trial Conference in the case for January 23, 2018 and the Trial for February 20, 2018. *Id.* The instant motion to amend was therefore filed past the deadline to amend pleadings as set by the District Court.

Counter-defendants state that good cause has been shown to amend their answer. R. Doc. 62-1, p. 1. The movants state that they recently determined that they should add additional affirmative defenses in this case. *Id.* at p. 3. They state that the amendment is important because the defamation claims allege they have accused Landry of conduct that "could be characterized as criminal" and that some claims against the counter-defendants involve the conduct of an individual who was not their employee. *Id.* at p. 4. Next, counter-defendants say that at the time of the filing depositions had not been taken and discovery was in the initial stages and because these additional defenses cover the counterclaims. They further state any discovery already covers these additional defenses and they argue this results in no prejudice. *Id.* Finally, movants state that no continuance is necessary because they have no intent to delay the proceedings. *Id.* They further argue that there is no substantial reason for denying their leave to amend because they have not unduly delayed filing the motion, there is no bad faith or dilatory motive, and there is no undue burden that will be caused. *Id.* at p. 4, 5. No opposition to this motion was filed.

**II.     Standard of Review**

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings before trial. Rule 15(a) allows a party to amend its pleadings "only with the other party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Moreover, the Rule urges that the Court "should freely give leave when justice so requires." *Id.* In taking this liberal approach, the Rule "reject[s] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

"Rule 15(a) requires a trial court 'to grant leave to amend freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.' " *Jones v. Robinson Prop. Grp.*, 427 F.3d

4

987, 994 (5th Cir. 2005) (internal quotations marks omitted) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002)). When denying a motion to amend, the court must have a "substantial reason" considering such factors as " 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... and futility of the amendment.' " *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones*, 427 F.3d at 994). An amendment is deemed to be futile if it would be dismissed under a Rule 12(b)(6) motion. *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)).

"[T]he Fifth Circuit [has] clarified that when, as here, a scheduling order has been issued by the district court, Rule 16(b) governs amendment of pleadings." *Royal Ins. Co. of America v. Schubert Marine Sales*, 02–0916, 2003 WL 21664701, at *2 (E.D. La. July 11, 2003) (Englehardt, J.) (citing *S & W Enterprises, L.L.C. v. Southtrust Bank of Ala.*, 315 F.3d 533, 535–36 (5th Cir. 2003)). Rule 16(b) limits changes in the deadlines set by a scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). To determine if good cause exists as to untimely motions to amend pleadings, the Court should consider: "(1) the movant's explanation for its failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure that prejudice." *Schubert Marine Sales*, 2003 WL 21664701, at *2 (citing *S & W Enterprises*, 315 F.3d at 536). To meet the good cause standard, the party must show that, despite its diligence, it could not reasonably have met the scheduling order deadline. *See S&W Enters.,* 315 F.3d at 535. If the movant can show good cause, the Court will then apply the liberal standards of Rule 15(a). *Id.* at 536.

**III.     Analysis**

As an initial matter, the District Court issued a scheduling order in this case on August 10, 2017. R Doc. 52. According to that order, the time for amending pleadings has passed. Because the current motion to amend was filed past the scheduling orders deadline this Court is required to apply Rule 16(b) and its good cause requirements to the counter-defendants' instant motion.

The counterclaim was filed on August 2, 2017, and the counter-defendants filed their answer on September 25, 2017. Under Rule 15(a) the counter-defendants had 21 days to amend the pleading as a matter of course, however, counter-defendants did not do so within that timeframe. Counter-defendants then filed the instant motion on November 6, 2017, seeking leave to amend their answer to add additional affirmative defenses past both the District Court's deadline as well as the time to amend as a matter of course. In addition, at the time of the filing of the motion there was just slightly over one month left in the discovery period because the District Court set the discovery deadline for December 8, 2017. The pre-trial conference is set for January 23, 2018, with trial set for February 20, 2018.

When a scheduling order has been issued by a district court Rule 16(b) requires good cause for the amendment of pleadings. *See Schubert Marine Sales*, 2003 WL 21664701, at *2. In determining whether good cause exists the court considers the movants explanation for the failure to amend in a timely fashion, the importance of the amendment, the potential prejudice of the amendment, and the availability of a continuance to cure that prejudice. *Id*.

First, the movants state that, "[r]ecently, plaintiffs/counter-defendants determined that it should include additional affirmative defenses to their answer to defendant/counter-plaintiff's counterclaims." R. Doc. 62-1, p. 3. The first factor that a court considers when determining whether good cause to amend exists is the movant's explanation for its timely failure to amend.

6

*See Schubert Marine Sales*, 2003 WL 21664701, at *2. The instant motion does not provide an explanation as to why there was a delay in amending their answer. There has been no indication as to why the counter-defendants were unable to identify the additional defenses they seek to add at the time of their original answer or within the period of amendment as a matter of course.

The Court finds that the counter-defendants were aware of or should have been aware of these affirmative defenses involving employer liability and yet failed to amend to include these additional affirmative defenses in a timely manner. Supporting this Court's finding that the counter-defendants should have been aware of these affirmative defenses is the fact that the seventh affirmative defense in the original answer states that counter-defendant HomeLife "did not authorize, condone, ratify or tolerate any such violation, and such conduct may not be attributed to counter defendant through principals of agency, respondent[sic] superior, or otherwise." R. Doc. 48. Further, defamation was clearly listed in the claims by the counter-plaintiff and yet counter-defendants do not explain why the affirmative defense of statements being "truthful, opinion, required and/or protected by qualified or complete privilege" were not listed at the time of their answer to these counterclaims.

As noted above, the only explanation given is that, "[re]cently, plaintiffs/counter-defendants determined that it should include additional affirmative defenses to their answer to defendant/counter-plaintiff's counterclaims." R. Doc. 62-1, p. 3. This is not an explanation for the untimely filing. Rather, it is a mere conclusion not supported by any recently discovered information or change in the circumstances of the litigation. The Court finds therefore that the counter-defendants have provided no explanation for the failure to amend in a timely fashion and this weighs heavily against a finding of good cause exists on this basis alone, however, the Court will additionally analyze the other Rule 16(b) factors for thoroughness.

7

Second, the Court finds that the importance of the amendment factor weighs against the granting leave to amend. Generally, in federal courts, "a failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that defense and its exclusion from the case." 5 C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1278 (3d ed.). Therefore, the ability to plead affirmative defenses is important as a general matter. However, the movants have failed to indicate with any specificity why these affirmative defenses and their addition at this point in the litigation is important.

Counter-defendants assert this amendment is important because it involves defenses regarding counterclaims in this case. They state that the assertion of qualified or complete privilege is important because Landry alleges that they accused her of conduct that could be characterized as criminal. However, they do not indicate how a privilege defense actually applies to the claims made by Landry or why the defense is important now, when it appears they could have pleaded it in their original answer. The counter-defendants also do not indicate why the of the affirmative defense that actions were committed by an individual outside the scope of their employment is important now, when it also appears it could have raised at the time of the original pleading. Therefore, while as a general matter the pleading of affirmative defenses is important, the Court cannot assess the importance of adding these additional defenses outside of the pleading deadline when the movants have provided no substantial argument as to why they are important or indicated why they could not have been raised in a timely manner. As such, the Court finds the second factor weighs against amendment.

The counter-defendants argue that under the third factor there would be no prejudice in granting the amendment. At the time of the filing of the motion, movants state that discovery was in the early stages and depositions had not yet been taken. R. Doc. 62-1, p. 4. Movants also state

that the discovery in the case already covers the additional defenses. Taking the counter-defendants argument as true, then there would be little to no prejudice to the counter-plaintiffs by granting the amendment. However, the movants have not provided the Court with any way to verify whether the discovery in the case actually includes these defenses. Without more information the Court cannot accurately assess whether prejudice would or would not result from the amendment. Therefore, the Court finds that the prejudice factor is neutral with regards to granting the amendment.

Fourth, because the Court found that it cannot accurately assess whether prejudice would or would not result from an amendment, the Court cannot determine whether a continuance would be necessary or if it could act as a cure to any prejudice. As such the fourth factor is also neutral.

Under the good cause standard the party must show that, despite its diligence, it could not reasonably have met the scheduling order deadline. *See S&W Enters.,* 315 F.3d at 535. In evaluating the factors set forth by the Fifth Circuit, and especially the movants failure to explain why despite due diligence they were unable to amend in a timely fashion, the Court finds that good cause has not been demonstrated. Therefore, the Court finds that the motion must be denied.

### IV.    Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiff/Counter-defendants' **Motion for Leave to Amend Answer to Counter-Plaintiff's Counterclaims (R. Doc. 62)** is **DENIED.**

New Orleans, Louisiana, this 21th day of December 2017.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**