| | |
|---|---|
| **HOMELIFE IN THE GARDENS, LLC ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 16-15549** |
| **LEIGH LANDRY** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion[1] filed by HomeLife in the Gardens, LLC ("HomeLife") and Donald E. Rankey, Jr. ("Rankey") (collectively, "counterclaim-defendants") for summary judgment as to all counterclaims asserted by Leigh Landry ("Landry"). The motion is unopposed.[2]

### I.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines that there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

---

[1] R. Doc. No. 70.
[2] The counterclaim-defendants' motion for summary judgment was set for submission on December 27, 2017. Under Local Rule 7.5, Landry's opposition was due "no later than eight days before the noticed submission date." However, Landry did not attempt to file an opposition until the submission date, rendering the opposition untimely. Landry then did not file a procedurally proper motion for leave to file her untimely opposition until January 4, 2018. *See* R. Doc. No. 81. The Court eventually denied Landry's motion for leave to file her untimely opposition. *See* R. Doc. No. 82.

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its initial burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue of material fact is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* However, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017) (quoting 11 Moore's

2

Federal Practice–Civil ¶ 56.91 (2017)). "This flexibility allows the court to consider the evidence that would likely be admitted at trial . . . without imposing on parties the time and expense it takes to authenticate everything in the record." *Maurer v. Independence Town*, No. 16-30673, 2017 WL 3866561, at *3 (5th Cir. Sept. 5, 2017).

Further, "[a] motion for summary judgment cannot be granted simply because there is no opposition," but "a court may grant an unopposed summary judgment motion if the undisputed facts show that the movant is entitled to judgment as a matter of law." *Day v. Wells Fargo Bank Nat. Ass'n*, 768 F.3d 435 (5th Cir. 2014) (per curiam); *see also Hibernia Nat'l Bank v. Adminitracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c) [of the Federal Rules of Civil Procedure], the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

## II.

The Court has reviewed the counterclaim-defendants' motion and the uncontroverted evidence submitted in support of the motion. For the non-sanction-related reasons urged by the counterclaim-defendants,[3] the Court concludes that summary judgment in their favor as to all but one of Landry's counterclaims is warranted. More specifically, the Court will grant summary judgment in the counterclaim-defendants' favor as to Landry's Title VII hostile work environment claim, intentional infliction of emotional distress claim, whistleblower claim,

---

[3] *See* R. Doc. No. 74, at 6-15.

Louisiana Unfair Trade Practices Act claim, defamation claim, and fraud claim. However, the Court concludes that summary judgment in favor of the counterclaim-defendants is not warranted with respect to Landry's assault and battery claim.

In the counterclaim-defendants' memorandum in support of their motion for summary judgment, the only ground urged by the counterclaim-defendants to justify dismissal of Landry's assault and battery claim is Landry's alleged perjury during her deposition.[4] In rare cases, a district may indeed dismiss one or more of a party's claims with prejudice as a sanction for the party's conduct during the course of the litigation. *See, e.g., Brown v. Oil States Skagit Smatco*, 664 F.3d 71 (5th Cir. 2011) (affirming a district court's dismissal of a plaintiff's entire complaint with prejudice where the plaintiff had "committed fraud upon the court" through his "perjured [deposition] testimony," *id.* at 78).

In order for a party's conduct to justify dismissal of her claims, however, there must be "a clear record of delay *or* contumacious conduct by the [party]," and the court must determine that "lesser sanctions would not serve the best interests of justice." *Id.* at 77 (emphasis in original). "[I]t is not a party's negligence—regardless of how careless, inconsiderate, or understandably exasperating—that makes conduct contumacious; instead, it is 'the *stubborn resistance to authority*' which justifies a dismissal with prejudice." *Id.* (emphasis and alteration in original).

---

[4] *See id.* at 4-6.

Before the start of her deposition, Landry took an oath to testify truthfully.[5] This oath is crucial to the proper administration of justice and the integrity of the judicial process. Our legal system depends on people following their oaths.

Landry appears to have defied her oath during her deposition testimony relating to her knowledge of the circumstances surrounding the death of the counterclaim-defendants' former counsel's son. In response to the question, "Do you know what happened to his son?," Landry testified: "I do, and I do know what happened, and I do know that it was his fault, because I know the policeman that was on duty that day."[6] Landry then went on to attribute the death of the former counsel's son to the former counsel "being drunk and driving a boat."[7]

When asked what evidence she had as to the former counsel "being drunk," Landry at first refused to answer the question.[8] The following exchange then took place between Landry and the counterclaim-defendants' current counsel:

> Q: How do you know that [the former counsel] had alcohol in his blood that day?
>
> A: Because I know the police.
>
> Q: And who told you that?
>
> A: Me.
>
> Q: No—you're not the police. Who told you?
>
> A: People who were there.
>
> Q: Who?

---

[5] *See* R. Doc. No. 70-3, at 2.
[6] *Id.* at 36.
[7] *Id.* at 37.
[8] *See id.*

5

> A: I'm not—no one.
>
> Q: No one's told you that?
>
> A: Yes, ma'am. No one. No one.
>
> Q: So you're going from people told you to no one told you?
>
> Landry: No one's told me.[9]

Landry went on to admit that she "made it up," although after a break during the deposition she modified her answer again, attributing her information to an attorney who is representing another former HomeLife employee against HomeLife before the EEOC.[10]

This is not the only example of Landry's credibility being placed into question. At one point, Landry testified that a signature on a document marked as Exhibit 1 was not her signature.[11] However, she later contradicted herself, testifying that this signature was in fact her own.[12]

Landry also seems to have materially departed from her previous description of the day that she was terminated from HomeLife. In a sworn affidavit filed with the Court on May 25, 2017, Landry stated that she was "physically escort[ed] . . . out of the building" by three men: Rankey, counterclaim-defendants' former counsel, and Rankey's son.[13] Landry also stated that "[t]hey have yet to return my personal

---

[9] *Id.* at 37-38.
[10] *Id.* at 39-40.
[11] *See id.* at 5-6.
[12] *See id.* at 41-43.
[13] R. Doc. No. 21-3, ¶ 13.

6

items."[14] Landry repeated this characterization of her termination in her answer to the complaint.[15]

However, describing her termination during her deposition, Landry testified that she "got one of [her] boxes that [she] was putting stuff in, and . . . went towards the front of the building, and [she] went out to [her] car, and [she] put that one [sic]."[16] She went on: "And then [Rankey's son] was grabbing me by my arm the whole time. And I—when I went out to my car. And so I did that about two or three times and— I mean, I didn't have a lot of stuff at all. The—some—you know, some of them were little, and—and then I left the building."[17] The counterclaim-defendants' current counsel then asked Landry several follow-up questions:

> Q: All right. So you're—[Rankey's son] escorted you to your car multiple times?
>
> A: (Affirmative response.)
>
> Q: Is that what you're telling me?
>
> A: Two or three times, (affirmative response).
>
> Q: For you to put things in your car?
>
> A: Yes, ma'am.
>
> Q: And where was Mr. Rankey at this mo—
>
> A: I don't know, and I di—I didn't care at that point. I don't know?
>
> Q: Where was [the counterclaim-defendants' former counsel]?

---

[14] *Id.*
[15] *See* R. Doc. No. 48, at 6.
[16] R. Doc. No. 70-3, at 34-35.
[17] *Id.* at 35.

7

A: I don't know.[18]

Thus, Landry appears to have shifted from a sworn statement that she was forcibly removed from the HomeLife facility by three men with no opportunity to collect her belongings, to testimony under oath that she had an opportunity to make several trips between her car and office to collect her belongings, and that only one man served as her escort during those trips.

In short, during the course of her deposition, Landry accused the counterclaim-defendants' former counsel of serious criminal conduct, *see* La. R.S. § 14:32.1 (vehicular homicide), and appears to have known that the accusation was false when she made it. In making this and other representations at her deposition, it may be argued that Landry committed perjury.

While Landry's conduct may justify some sanction, dismissal of a claim with prejudice "is an extreme sanction that deprives a litigant of the opportunity to pursue [the] claim." *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1418 (5th Cir. 1995) (internal quotation marks omitted). The Fifth Circuit has instructed district courts to use "the least onerous sanction which will address the offensive conduct." *Brown*, 664 F.3d at 78 (quoting *Gonzalez v. Trinity Marine Grp., Inc.*, 117 F.3d 894, 899 (5th Cir. 1997)). The Fifth Circuit considers monetary sanctions a less extreme sanction than dismissal with prejudice. *See id.*

The Court concludes that a sanction less extreme than dismissal with prejudice could adequately address the conduct about which the counterclaim-defendants

---

[18] *Id.*

complain, and the Court would be willing to entertain a motion requesting such a sanction at an appropriate time. Therefore, the Court will not dismiss her assault and battery claim on the ground urged by the counterclaim-defendants. Landry is on notice, however, that should the Court be convinced that Landry committed perjury at trial, an appropriate referral and/or sanction will be ordered.

### III.

Accordingly,

**IT IS ORDERED** that the counterclaim-defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the motion is **DENIED** with respect to Landry's assault and battery claim. In all other respects, the motion is **GRANTED**.

New Orleans, Louisiana, January 9, 2018.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**